UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

C-N-P Northwest, Ltd. d/b/a Cash-N-Pawn,      Civil No. 06-2516 JMR/FLN
a Minnesota Corporation

     Plaintiff,

     v.                **REPORT AND RECOMMENDATION**

Sonitrol Corp., d/b/a Sonitrol of the Twin Cities,
a Delaware Corporation

     Defendants.

_____

David W. Larson for Plaintiff.
Brooks F. Poley for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 14, 2007, on Defendant Sonitrol's Motion for Partial Summary Judgment [#43]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion be **GRANTED in part** and **DENIED in part**.

## I. UNDISPUTED FACTS

Plaintiff runs a pawnbroker business called "Cash-N-Pawn." (First Amended Complaint (hereinafter "Compl.") ¶ 2.) Defendant installs and monitors security systems. (Compl. ¶ 3.) Both Plaintiff and Defendant agree that they engaged in negotiations for security services. In June of 2005, Cash-N-Pawn closed its Brooklyn Center, Minnesota, location and moved the store's inventory to a new store in Crystal, Minnesota. (Pl. Ex. 8 (Barlock depo. t.p. 29).) John Barlock, Cash & Pawn's manager testified that before Cash-N-Pawn closed its Brooklyn Center location and moved the inventory to the store in Crystal, he spoke with a Sonitrol representative and "outlined

a plan where we would . . . set up a perimeter system at Crystal and bring the rest of the system from Brooklyn Center to Crystal once we closed Brooklyn Center." (*Id.*) Defendant prepared a quote for the services on June 3, 2005. (Pl. Ex. 1.) The Defendant included installation of a cellular backup on the quotation. (*Id.*) On the same day as the quotation, Plaintiff and Defendant signed two documents prepared by Defendant: one titled "Limited Performance Warranty," (Def. Ex. H.), and an untitled two-sided document (the "Untitled Document"). (Def. Ex. A.) The Limited Performance Warranty sets forth a liability-limitation of $5,000. (Def. Ex. H.) The Untitled Document sets forth the costs of installation and monitoring of a security system that is described in the quotation on June 3, 2005. (Def. Ex. A.) The Untitled Document also sets forth additional liability limitations. (*Id.* at p. 2-3.) Both of these writings have clauses that indicate the contract is not enforceable until installation has been completed. The first line of the Limited Performance Warranty states that the contract takes effect "[b]eginning after seven consecutive days from installation and operation . . .." (Def. Ex. H, p. 1, ¶ 1.) The Untitled Document states "this agreement is for a term of five years from the date installation is completed." (Def. Ex. A, p. 2.) The Untitled Document also contains a paragraph that states "[c]lient acknowledges that the system installed is as requested and is suitable to his purpose and unless defects or omissions are called to dealer's attention, in writing, within five (5) days after completion of installation, client accepts system as is." (*Id.* at p. 3, ¶ 12(f).) On the front of the Untitled Document, Defendant had designated space to write in the estimated date that installation would begin and the estimated date that it would be "substantially completed," both of these spaces were left blank. (*Id.* at p. 2.) The Limited Performance Warranty states that "[n]othing in this addendum, unless specifically stated otherwise, shall modify or supersede the terms of the principal Agreement." (Def. Ex. H.)

2

After the signing of these two documents, Defendant moved and installed security equipment for Plaintiff on July 14, 2005. (Def. Ex. C (Grace depo. at 6).) Defendant was to install the cellular backup in Cash-n-Pawn's Crystal store no later than June 30, 2005. (Pl. Ex. 5.) On July 27, 2005, Don King, the Sonitrol Zone operations manager for the upper Midwest region, checked off on the "Management Installation Inspection Guide" for the Crystal store that the installation was complete "per the quote sheet." (Pl. Ex. 4.) Sonitrol sent Cash-N-Pawn a bill for the Crystal location's security system installation, which included a cellular backup, on or about July 22, 2005. (Pl. Ex. 1.) The amount invoiced was $1,875 which was the amount quoted on the quote sheet of June 3, 2007, a quote which was for a security system that included not only a perimeter system but also a cellular backup. (Pl. Ex. 1.)

The cell phone backup was not installed until after the burglary. (Grace depo. t.p. 20-21.) Plaintiff alleges that Defendant failed to install a cellular backup module, which allows for the alarm system to function when the telephone line is not operational. (Compl. ¶¶ 8-9.) Plaintiff further alleges that the absence of the cellular module allowed thieves to cut Plaintiff's telephone line, enter the store and remove property from Plaintiff's store on January 1, 2006. (Compl. ¶ 15.) Plaintiff brings claims against Defendant for breach of contract (Count I), breach of implied contract (Count II), reckless misrepresentation (Count III), negligent misrepresentation (Count IV), and negligence (Count V). (Compl. ¶¶ 17-34.)

Defendant seeks summary judgment for the breach of contract claim (Count I) to the extent that it seeks damages in excess of the liability-limitation provisions. Defendant also seeks summary judgment on Counts II, III, IV and V in their entirety.

## II. STANDARD OF REVIEW

3

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III. LEGAL ANALYSIS

**A. The Limitations on Liability in Count I**

    **1.    The limitations of liability in the Untitled Document and the "Limited Performance Warranty" were not in effect at the time of the break-in**.

Defendant argues that the limitations on liability set out in the Untitled Document were in effect at the time of the break-in. Defendant presents no evidence other than the language of the document and the facts that were alleged in the Complaint. The Court rejected this argument in its opinion addressing Defendant's Motion to Dismiss [#7].

In its Reply brief, Defendant contends that the "Limited Performance Warranty" was in effect at the time of the break-in because the warranty takes effect "seven consecutive days from installation and operation in Customer's premises of Sonitrol security devices and equipment of a type authorized and approved by Sonitrol Corporation." (Def. Ex. H, par. 1.) "A clause exonerating a party from liability will be strictly construed against the benefitted party." *Schlobohm v. Spa Petite*, 326 N.W.2d 920, 023 (Minn. 1982). The language in the document is ambiguous. It could mean that the Warranty is in effect once the first piece of equipment - no matter how small - is installed. The language is fairly interpreted to be consistent with the language of the Untitled Document, of which the Limited Performance Warranty is an Addendum. The Court finds that the Limited Performance Warranty takes effect seven days after installation is *completed*.

Defendant argues that because the system was operational before the cellular backup was installed *at the Plaintiff's request*, the Limited Performance Warranty began once the basic perimeter system was installed and operational. This argument does not change the fact that the document being construed is ambiguous. "An exculpatory clause is unenforceable if it is ambiguous in scope . . ." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 789 (Minn. 2005) (citing *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 923 (Minn. 1982).

The Court acknowledges that clearly drafted contracts limiting liability are enforceable. Indeed, the Minnesota Supreme Court has noted that "the public interest in freedom of contract is preserved by recognizing such clauses as valid." *Schlobohm*, 326 N.W.2d at 923.  However, in this case the document at issue was not clearly drafted.  Defendant's motion for summary judgment to limit liability as set out in the Untitled Document and the Limited Performance Warranty must be denied.

**2.  Defendant's Estoppel Argument Fails**

Defendant argues that Plaintiff should be estopped from claiming that the Client Agreement is not in effect because the Defendant performed services under the Client Agreement and Plaintiff accepted these services.

The elements of equitable estoppel are:

(1)   There must be a misrepresentation of material fact;
(2)   The party to be estopped must be shown to have known that the representation was false;
(3)   The party to be estopped must have intended that the representation be acted upon;
(4)   The party asserting the estoppel must not have knowledge of the true facts; and
(5)   The party asserting the estoppel must have relied upon the misrepresentation to his detriment.

*Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn. 1978).  *See also Minnesota Commercial Ry. Co. v. General Star Indem. Co.*, 408 F.3d 1061, 1063 ("Estoppel is an equitable doctrine 'intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights.") These factors must be established by a preponderance of the evidence and the facts used to prove them must be "clear, positive and unequivocal in their implications."  *Rice St. VFW, Post No. 3877 v. City of St. Paul*, 452 N.W.2d 503, 508 (Minn. Ct. App. 1990).

Defendants fail to allege that Plaintiff made a misrepresentation of material fact.  In its reply brief, the Defendant states that the misrepresentation "may consist of silence or a negative omission to act, and it is enough if the circumstances are such that knowledge of the truth is imputed to the actor."  (Def. Br. at 7, citing *May v. Ackerman*, 51 N.W.2d 87 (Minn. 1951).)  The alleged "truth" to which the Defendant appears to be referring is that the Plaintiff "consented to commencement of the Client Agreement" because it requested two separate installation events during which time the Defendant was to monitor both the Crystal store and the Brooklyn Center store.  According to the Defendant, Plaintiff's agreement to enter into this arrangement necessarily meant that it consented to the Client Agreement because the "Defendant will not provide any services to a client until the client enters into a Client Agreement and consents to the terms therein."  (Def. Br. at 7.)

The Plaintiff did consent to the terms of the Client Agreement, terms which did not take effect until five days after installation was complete.  Defendant does not contend that it communicated to the Plaintiff that the contract was to take effect before what was stated in the contract's express language.  Defendants essentially argue that Plaintiff should have known that Defendants intended the contract to take effect before the time designated in the written contract. Defendants contend that because Plaintiffs did not point out this specific provision and confirm with Defendants that the contract took effect five days after completion of installation, that they made a misrepresentation of material fact.  These claims against the Plaintiff do not constitute misrepresentation of a material fact which gives rise to a claim for equitable estoppel.  As Plaintiff points out in its brief, these claims essentially reargue Defendant's argument that the limitations of liability in the contract took effect when the Plaintiff signed it, not when the

7

contract stated they took effect.

### 3. Defendant's Policy Argument

Defendant argues that the law generally supports limitations on liability for security system installment omissions. (Def. Br. at 17.) The Court does not find this argument persuasive because the cases cited involved different companies with different contract language. This case is a matter of contract interpretation and the contract at issue did not take effect until five days after installation was completed. Plaintiff contends installation was not completed until the cellular backup was installed, after the burglary that gives rise to this claim. In citing to these cases, Defendant does not argue that the security system companies in these cases had similar language (that the contract took effect five days after installation) or that the court in those cases disregarded the express language of the contract indicating when the contract took effect in favor of the general policy that there should be limitations on liability for security system installment omissions.

### B. Implied Contract Claim (Count II)

The Defendant claims that an implied contract did not exist and therefore summary judgment should be granted on Count II.

While the existence of a contract is generally a question for the fact finder, "summary judgment is proper when 'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Eischen Cabinet Co. v. New Tradition Homes, Inc.*, 2006 WL 3593051, *3 (Minn. App. 2006) (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). Where there is no express agreement, the court may find an implied contract from the circumstances or acts of the parties. *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*,

225 N.W.2d 261, 263 (Minn. 1975).

The Defendant claims there is no evidence that the parties intended that there be more than one contract beyond the contract formed by the Untitled Document because the parties always put contracts between them in writing. (See Pl. Ex. 3.) Defendant also contends that because the Untitled Document, the security system quotation, and the Limited Performance Warranty are all dated the same day, they are all fully integrated into the Untitled Document. Defendant contends that where an express contract exists, there can be no implied contract with respect to the same subject matter. *Reese Design v. I-94 Highway 61 Eastview Ctr. P'ship*, 428 N.W.2d 441, 446 (Minn. Ct. App. 1988).

Plaintiff contends that the parties made an agreement, part verbal and part written, that Sonitrol would install a security system with a cellular backup at Cash-N-Pawn's Crystal location and provide monitoring services after installation. (Pl. Ex. 8 (Barlock dep. at 29).) Plaintiff contends that based on the verbal agreement, the parties signed the Untitled Document and the Limited Performance Warranty, the terms of which were not to take effect until installation was completed. Because installation was never completed, "an essential precondition to making the terms of the writing effective did not occur, and the written terms of the contract remained nothing more than an inchoate contract." (Pl. Br. at 13.) Even though the writing never took effect, Plaintiff contends that the oral agreement continued to exist and the parties performed on that agreement.

The case cited by Defendant, *Reese Design*, does not apply to this case. The court in *Reese Design* held that where an express contract exists, there can be no implied contract with respect to the same subject matter. 428 N.W.2d at 446. In this case, the express contract did not

9

take effect because completion of installation never occurred. The Court agrees with the Plaintiff that the circumstances and actions of the parties demonstrate that an implied contract existed. John Barlock, one of Cash-N-Pawn's managers, testified that he spoke with a Sonitrol representative on the phone to outline a plan to set up a security system at the Crystal location which included installation of a cellular backup. (Pl. Ex. 8 (Barlock dep. at 29).) The security system quotation presented to Cash-N-Pawn offered to install a system which included a cellular backup. (Pl. Ex. 1, Pl. Ex. 5.) A Sonitrol employee wrote on the "Sales Job Kit" sheet that the company would install the cellular backup at Cash-N-Pawn's Crystal location by June 30, 2005. (Pl. Ex. 5.) On June 27, 2005, Sonitrol Operations Manager Don King checked off on the "Management Installation Inspection Guide" that "[i]nstallation is complete per the quote sheet." (Pl. Ex. 4.) Sonitrol sent Cash-N-Pawn an invoice dated July 22, 2005 for installation of the "[b]urg system moved and added to at Cash-N-Pawn, 5445 Lakeland Ave., Crystal, MN." (Pl. Ex. 1.) The amount charged was $1,875, the same amount stated on the quote sheet. (*Id.*) As Plaintiff contends, these facts establish the existence of an implied contract, rendering summary judgment for Defendant on Count II inappropriate.

C.     **Misrepresentation Claims (Counts III and IV)**

The Minnesota Supreme Court has adopted the Restatement (Second) of Torts § 552, which states a cause of action for negligent misrepresentation:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986) (citations omitted). In *Florenzano*, the

10

court also indicated that there may be a cause of action for reckless misrepresentation where in addition to the elements set out above, a party proves fraudulent intent. *Id*. at 173. Such intent includes "when a misrepresenter speaks positively and without qualification but is either conscious of ignorance of the truth, or realizes that the information on which he or she relies is not adequate or dependable enough to support such a positive, unqualified assertion." *Id.* It is somewhat unclear as to whether or not the *Florenzano* court recognized a cause of action for reckless misrepresentation but the Eighth Circuit concluded that it did in *Zutz v. Case Corp.*, 422 F.3d 764, 770 (8th Cir. 2005).

Plaintiffs have presented evidence that Defendant billed them on July 22, 2005, for installation of the security system in Crystal. (Pl. Ex. 1.) The invoice was for $1,875, the price stated in the quotation, a price for services which included installation of a cellular backup. (Pl. Ex. 1.)

Plaintiff also claims that Sonitrol's installation technician, Jonathan Grace, communicated that "everything is good" and "everything is up and running" in regard to the security system installed at the Crystal location on or about June 27, 2005. (Def. Ex. B (Barlock Dep. at 26, 37, 38.).) Plaintiffs claim that when Grace made those statements, he was referring to both the perimeter system and the cellular backup. Defendant disputes that Grace made these statements in regard to the cellular backup. In his deposition, Grace testified that he spoke to the Cash-N-Pawn employees at the time he installed the perimeter system and indicated that the perimeter system was up and running. (Def. Ex. C (Grace Dep. 12-13).) Defendant contends that this communication was made before the cellular backup was supposed to have been installed on June 30, 2005, (See Pl. Ex. 5), and therefore, Plaintiff's employee knew that any

11

statements Grace made were not made in regard to the cellular backup. However, in the "Management Installation Inspection Guide" dated June 27, 2005, Don King, the Sonitrol Zone operations manager for the upper Midwest region, checked off on the "Management Installation Inspection Guide" for the Crystal store that the installation was complete "per the quote sheet," a quote which included a cellular backup. (Pl. Ex. 4.) Thus, the Court finds that there is a genuine issue of material fact as to whether Mr. Grace was referring only to the perimeter system or to the entire security system when he represented on or about June 27, 2005, that the system was up and running.

Plaintiff presented evidence that Cash-N-Pawn employee Eric Barlock called Sonitrol's central monitoring station in Texas and told him to "punch several buttons." (Def. Ex. B (Barlock dep. at 22, line 29-24).) According to Plaintiff, once Barlock punched the appropriate buttons, the Sonitrol representative stated that the signal was received and that the shop was protected. (*Id.* at 22-23.) Defendant denies that Plaintiff made these calls. (Def. Br. at 28.) Thus, there is a genuine issue of material fact with respect to these statements.

Defendants also argue that under the court's holding in *Peterson v. Honeywell, Inc.*, 1994 WL 34200, *4 (Feb. 8, 1994), Plaintiff has no basis for justifiably relying on the alleged statements made by Sonitrol employees at the monitoring station in Texas that they received a signal from the Crystal store and that it was protected. *Peterson* is not persuasive because the court's reasoning is based on the contract entered into between the parties, a contract that "disclaimed any implied warranty of merchantability or fitness for a particular purpose." 1994 WL 34200 at *4. In this case, the Court has found that the contract which the parties signed (the Untitled Document) never went into effect because installation was never completed. Given that

12

the contract formed in this case was not subject to any similar disclaimer to that in *Peterson*, the case is inapplicable.

E.  **Defendant's Motion for Summary Judgment on the Negligence Claim must be Granted (Count V)**

The Plaintiff argues that the Restatement of Torts, Second, § 323 applies in this case. In a number of cases cited by Plaintiff, the Minnesota Supreme Court has discussed the Restatement of Torts, Second, § 323 which provides:

> Negligent Performance of Undertaking to Render Services
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > 1. his failure to exercise such care increases the risk of such harm, or
> > 2. the harm is suffered because of the other's reliance upon the undertaking.

*Cited in Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493-94 (Minn. 1996) (addressing liability for gratuitous undertaking); *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn. 1979) (Restatement discussed in regard to city's liability in failing to perform a duty outlined in an ordinance)*; Superior Const. Services, Inc. v. Moore*, 2007 WL 1816096, *2 (Minn. App. 2007) (addressing bank's duty to a third party with respect to funds held by bank). However, Plaintiffs have failed to cite to any Minnesota case where a party has been held liable in tort, pursuant to the Restatement for failing to perform the services it agreed to perform in a contract. Indeed, under Minnesota law, there is no cause of action for negligent breach of contract. *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983).

The case cited by Defendants, *Vermes v. American District Telegraph Company*, 251

N.W.2d 101 (Minn. 1977), is directly on point. In that case, the Court held that a company providing security services may be liable to a party with whom it contracts to provide security services on a breach of contract theory but not on a negligence theory. Because Minnesota courts have not recognized a cause of action in tort for breach of a contractual duty, Defendant's motion for summary judgment on the negligence claim must be granted.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Partial Summary Judgment [#43] be **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent that Defendant seeks summary judgment limiting its liability on the breach of contract claim (Count I), the Court recommends that the motion be **DENIED**.

2. To the extent that Defendant seeks summary judgment on Plaintiff's claim for breach of an implied contract (Count II), the Court recommends that the motion be **DENIED**.

3. To the extent that Defendant seeks summary judgment on Plaintiff's reckless and negligent misrepresentation claims (Counts III and IV), the Court recommends that the motion be **DENIED**.

4. To the extent that Defendant seeks summary judgment on Plaintiff's negligence claim (Count V), the Court recommends that the motion be **GRANTED**.


DATED: December 4, 2007                              s/ *Franklin L. Noel*

                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 21, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 21, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.